**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| PANDORA JEWELRY, LLC<br>a Maryland limited liability company,<br>250 Pratt Street<br>Baltimore, MD 21201 | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-00615 |
| UNIQUE SALES CORP.<br>a Florida profit corporation,<br>9551 E. Broadview Dr.<br>Bay Harbor Islands, FL 33154 | |
| And, | |
| BORUCH B. DUCHMAN<br>9551 E. Broadview Dr.<br>Bay Harbor Islands, FL 33154 | |
| And, | **COMPLAINT FOR DAMAGES,<br>INJUNCTIVE, AND OTHER RELIEF<br>FOR VIOLATION OF 15 U.S.C. § 1114,<br>15 U.S.C. § 1125(a), AND RELATED<br>CLAIMS** |
| YONIT J. DUCHMAN<br>9551 E. Broadview Dr.<br>Bay Harbor Islands, FL 33154 | |
| And, | |
| JOHN DOES, 1-10, | |
| Defendants. | |

Plaintiff PANDORA Jewelry, LLC, a Maryland limited liability company ("Plaintiff" or

"PANDORA"), brings this action against Defendants Unique Sales Corp. ("Unique Sales"), Boruch

B. Duchman, Yonit J. Duchman, and John Does 1-10 (collectively, "Defendants") for trademark

infringement in violation of the Lanham Act, 15 U.S.C. § 1114; unfair competition in violation of

the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under Md. Code Ann., Bus. Reg.

1-414; common law unfair competition; and tortious interference with contract and business

relations, and alleges as follows. These claims arise from Defendants' misappropriation of

PANDORA's trademarks in conjunction with Defendants' unlawful and unauthorized sale of non-genuine products bearing PANDORA's trademarks on the Internet.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a Maryland limited liability company with its principal place of business in Baltimore, Maryland.

2.      Upon information and belief, Defendant Unique Sales Corp. is a Florida profit corporation with its principal place of business in Florida.  According to records of the Florida Division of Corporations, Unique Sales Corp.'s principal address, mailing address, and registered agent address is 9551 E. Broadview Dr., Bay Harbor Islands, FL 33154.

3.      Upon information and belief, Defendant Boruch B. Duchman is a natural person and owner, operator, and registered agent for Defendant Unique Sales Corp.  Upon information and belief, Defendant Boruch B. Duchman resides at 9551 E. Broadview Dr., Bay Harbor Islands, FL 33154.

4.      Upon information and belief, Defendant Yonit J. Duchman is a natural person and owner and operator of Defendant Unique Sales Corp.  Upon information and belief, Defendant Yonit J. Duchman resides at 9551 E. Broadview Dr., Bay Harbor Islands, FL 33154.

5.      Upon information and belief, Defendants operate a third-party storefront on www.amazon.com ("Amazon") that is currently called "StellarSales123" with Merchant ID ABKOQUU7CQEX7.

6.      The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise, of Defendants John Does 1 through 10 ("Doe Defendants") are unknown to PANDORA.  Therefore, PANDORA sues these Defendants by a fictitious name.  PANDORA is informed and believes, and on that basis alleges, that the Doe Defendants include persons and

entities assisting or acting in connection with the actions complained of herein and include persons and entities that are responsible in some manner for the acts, occurrences and liability hereinafter alleged and referenced. The Doe Defendants are unknown natural persons and/or corporations/business entities that unlawfully acquired, distributed, or sold products bearing PANDORA's trademarks. When the true names, involvement, and capacities of these parties are ascertained, PANDORA will seek leave to amend this Complaint accordingly.

## JURISDICTION

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367. Plaintiff's claims are predicated on 15 U.S.C. §§ 1114 and 1125(a) and (c), and related claims under state law.

8.     This Court has personal jurisdiction over Defendants because they have sold, distributed, offered for sale, and advertised goods in Maryland, and directed their tortious activities toward Maryland by engaging in actions and infringing on PANDORA's trademarks with the knowledge that their actions would likely injure PANDORA in Maryland. Defendants have caused injury to PANDORA in Maryland by acts in Maryland, including the sale, distribution, and advertising of non-genuine products bearing PANDORA's trademarks in Maryland. Defendants have also caused injury to PANDORA in Maryland through acts outside of Maryland while also (a) engaging in solicitation and service activities in Maryland, and (b) selling products into Maryland that were used within Maryland in the ordinary course of trade.

9.     Defendants have created an interactive storefront on Amazon called "StellarSales123." Through this interactive storefront, Defendants actively advertise, market, sell, ship, and distribute infringing products bearing PANDORA's trademarks in Maryland and to

Maryland residents.  Defendants continue to engage in these actions despite being put on notice of their illegal conduct and the impendency of this action.

10.     Defendants' activities in Maryland have been significant and they have made substantial and regular sales of infringing products bearing PANDORA's trademarks to Maryland. Defendants have sold, and continue to regularly sell, additional infringing products bearing PANDORA's trademarks into Maryland and to Maryland residents.

## VENUE

11.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims herein occurred within this judicial district.

## FACTUAL ALLEGATIONS

### PANDORA & Its Trademarks

12.     PANDORA is one of the most recognized jewelry brands in the world.  Founded by a Danish goldsmith in 1982, PANDORA now offers affordable, hand-finished jewelry made to the highest environmental and ethical standards.

13.     PANDORA's products include high-quality charms, bracelets, rings, earrings, necklaces, and pendants.  PANDORA's signature product is its charm bracelets, which women can style in personal ways to express unique moments and style.

14.     PANDORA products are available exclusively through its website, http://estore-us.pandora.net, through PANDORA owned and operated stores, and through franchisees and retailers who are expressly authorized by PANDORA to sell in their brick-and-mortar locations and on the Internet (franchisees and retailers hereafter "Authorized Dealers").

15.     PANDORA devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation.

4

16.     Genuine PANDORA products are packaged in a manner that amplifies the consumer experience.  The jewelry is packaged in a sturdy, PANDORA-branded white "clamshell" box with black velvet inlay on the interior with the PANDORA logo:



17.     On the manufacturing side, a piece of PANDORA jewelry can pass through 30 hands throughout PANDORA's elaborate crafting process, and PANDORA uses a vigorous quality control process including chemical tests on jewelry to ensure a consistent quality.

18.     On the consumer side, PANDORA also offers its customers general and product-specific care instructions, including on use, storage, and maintenance.

19.     On the distribution side, PANDORA's quality control consists of ensuring that its products are distributed only through PANDORA itself or through PANDORA Authorized Dealers who must follow PANDORA's quality controls and are accountable to PANDORA for any quality issues.  By distributing products exclusively in this manner, PANDORA is better able to control the quality and integrity of its products and ensure that customers receive accurate information about them.

20.     To promote and protect the PANDORA brand, PANDORA and the PANDORA Group[1] have registered numerous trademarks with the United States Patent and Trademark Office with respect to their brand and products, including, PANDORA® (U.S. Trademark Registration Nos. 4,118,900 and 3,613,181) PANDORA Jewelry® (U.S. Trademark Registration No. 3,065,374), Black Crown Diamond® (U.S. Trademark Registration No. 4,204,330) and Ö® (U.S. Trademark Registration No. 3,951,129) (collectively, the "PANDORA Registered Trademarks").

21.     The registration for each of the PANDORA Registered Trademarks is valid, subsisting, and in full force and effect.

22.     PANDORA and the PANDORA Group actively use and market the PANDORA Registered Trademarks in commerce.

23.     Consumers recognize the PANDORA Registered Trademarks as being associated with high-quality products in the jewelry market.

24.     Due to the quality and exclusive distribution of PANDORA's products, and because PANDORA is recognized as the source of high-quality products, the PANDORA Registered Trademarks have enormous value.

**Online Marketplaces and the Challenge They Present to PANDORA Product Quality**

25.     E-commerce retail sales have exploded over the past decade.  From Q3 2009 to Q3 2019, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 4.1% to 11.2%.  *See* Federal Reserve Bank of St. Louis, *E-Commerce Retail Sales as a Percent of Total Sales* (November 19, 2019), https://fred.stlouisfed.org/series/ECOMPCTSA.

---

[1] References to "Pandora Group" include Pandora Jewelry, LLC, Pandora A/S, Pandora Franchising LLC, Pandora Ecomm, LLC, Pandora Ventures, LLC, and all of its parents, affiliates, subsidiaries, or successors thereto (collectively the "Pandora Group").

26.     In 2018, consumers spent over $500 billion online with U.S. merchants, up more than 15% from the year before.  *See* Digital Commerce 360, *U.S. ecommerce sales grow 15.0% in 2018* (Feb. 28, 2019),  https://www.digitalcommerce360.com/article/us-ecommerce-sales/.   This massive growth is being driven largely by the growth of online marketplaces.   Amazon alone accounts for 40% of online retail, or over $200 billion in sales per year.

27.     While the online marketplaces have created a great deal of opportunity, they also greatly challenge a manufacturer's ability to control the quality of its products.

28.     For example, many online marketplaces including Amazon also allow third parties to sell products anonymously, *i.e.*, without disclosing their actual identity or sources to consumers. As such, any person or entity that is able to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal its identity to the consuming public.   This anonymity effectively prevents the manufacturer and consumer from being able to reach sellers, like Defendants, and address quality concerns.

29.     It is common for these unauthorized sellers to sell diverted and degraded products to unwitting consumers.  *See* CNBC, *Greed Report: Your quest for savings could land you in the 'gray market'* (Sep. 8, 2016),  https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html.

30.     Third-party sellers on Amazon may also sell counterfeit items, or allow counterfeit items to enter the stream of commerce through poor controls, sourcing, and fulfillment practices.

31.     For example, the Department of Homeland Security recently published a report noting that online marketplaces can facilitate the sale of counterfeit goods and that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods."   Department of Homeland Security,

*Combating Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf, at 7.  The report stated that consumers on online marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have been surprised to discover that upon completion of an online sales transaction, that the order will be fulfilled by an unknown third-party seller."  *Id*. at 14-15, 38.  To mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of third-party sellers."  *Id.* at 35.

32.     Similarly, the United States Senate Finance Committee recently published a Bipartisan Staff Report on the problems of counterfeit products on online marketplaces, noting that brands "have experienced a steady increase in the amount of infringing products sold online" and that marketplace "business practices" such as commingling inventory contribute to the problem.  Senate Finance Committee, *The Fight Against Fakes* (Nov. 7, 2019), available at: https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf, at 6-9.

33.     The press has also reported an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust these marketplaces and think that the products they are buying through these marketplaces are genuine. *See* Bloomberg, *Amazon Gets Real About Fakes* (Nov. 28. 2016), https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

34.     In its 2018 annual report to its shareholders, in fact, Amazon admitted that third-party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers.  Amazon.com, Inc., Annual Report (Form 10-K), at 14 (Jan. 31, 2019), available at

https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm.  Amazon conceded that these actions are "violating the proprietary rights of others," and warned its investors that Amazon "could be liable for fraudulent or unlawful activities" of Amazon third-party sellers.

35.    Because diverters, like Defendants, undertake great measures to maintain anonymity, manufacturers have no ability to exercise their quality controls over the products sold by the diverters or to ensure that only authentic, high-quality products that come with all of the product benefits are shipped to consumers.  A manufacturer's inability to exercise control over the quality of its products presents serious risks that consumers will receive inauthentic or otherwise poor-quality products and then blame the brand.

36.    Online marketplaces also threaten a manufacturer's ability to maintain its goodwill, reputation, and brand integrity because their construction and user interface obscure the identity of the specific seller and suggest that all sellers are selling the same product when they are not. When purchasing products on an online marketplace, customers cannot easily distinguish between a manufacturer's authorized and unauthorized sellers.  Indeed, on some marketplaces such as Amazon, all sellers of a product are put on the same listing and their identities are inconspicuous.

37.    When a customer purchases a product on an online marketplace and receives a poor-quality product, the customer is much more likely to associate that problem with the brand than the anonymous seller.

38.    Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products—online product reviews.  Any consumer who is dissatisfied with the product received can post a review on the marketplace for all other

consumers across the world to see.  These reviews, which are often permanently fixed, will often criticize the brand rather than the marketplace seller that sold the product.

39.     Online product reviews significantly impact a brand's reputation.  Survey results show that 82% of United States adults sometimes consult online reviews for information when they consider buying a new product online, and 40% always or almost always consult such reviews.  *See* Pew Research Center, *Online Shopping and E-Commerce: 2. Online Reviews* (Dec. 19, 2016), http://www.pewinternet.org/2016/12/19/online-reviews/.

40.     Consumers place extraordinary trust in these online reviews.  Indeed, consumers are over ten times more likely to rely on product reviews than product descriptions written by manufacturers.  *See* e-Marketer, *Moms Place Trust in Other Consumers* (Feb. 10, 2010), https://www.emarketer.com/Article/Moms-Place-Trust-Other-Consumers/1007509.

41.     Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has even begun suing companies that post fake reviews of their products on online marketplaces.  *See* Federal Trade Commission, *FTC Brings First Case Challenging Fake Paid Reviews on an Independent Retail Website* (Feb. 26, 2019), https://www.ftc.gov/news-events/press-releases/2019/02/ftc-brings-first-case-challenging-fake-paid-reviews-independent.

42.     Reviews are especially impactful on online consumers.  In a brick-and-mortar store, a consumer can simply select another product from the shelf if the initial product selected appears to be compromised.  However, online consumers are left simply having to hope that the product that shows up on their doorstep is of appropriate quality.  Therefore, online consumers rely more on brand reputation and reviews.

43.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a manufacturer's brand.  According to one study, merely three negative online reviews will deter a majority (67%) of online consumers from buying a product.  *See* Econsultancy, *How many bad reviews does it take to deter shoppers?* (Apr. 11, 2011), https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-deter-shoppers.

44.     Negative reviews also hurt a brand's placement in search results on Amazon and other search engines, as Amazon's search algorithm downgrades products it believes consumers are less likely to buy.  Thus, poor reviews can create a downward spiral where downgraded search placement leads to reduced sales, which leads to search placement falling further.

### Pandora Has Been the Target of Negative Online Marketplace Reviews from Customers Who Purchased Products from Unauthorized Sellers

45.     Pandora has been a victim of the issues caused by unauthorized sellers on the online marketplaces.  Indeed, Pandora has received many negative online marketplace reviews from customers who likely purchased products from unauthorized sellers such as Defendants.

46.     Defendants sell many products on Pandora-branded Amazon listings that have received negative reviews.  Product reviews on Amazon cannot be traced back to a specific seller, so consumers who view these reviews may attribute them to Pandora rather than Defendants.

47.     For example, Defendants are currently selling the "Pandora Asymmetric Heart Of Love Charm" product seen in the screenshot below.



48.     As seen in the following screenshot, numerous consumers have left negative reviews of this product complaining of receiving products that were fake, dirty, or damaged.

49.     Many of these consumers also complained of receiving that were not in authentic PANDORA packaging.  When consumers purchase a PANDORA product online but receive their items in shoddy packaging, they are not receiving the full benefit of what they purchase.  Moreover, consumers who receive PANDORA products in alternative packaging may question their authenticity, as these consumers did.



50.     Another PANDORA-branded product listing that Defendants are selling on is the "PANDORA Open Bangle Bracelet 596477."



51.     Two consumers on that listing have left reviews after receiving products that were likely fake.  Indeed, the first consumer even appears to have received a broken product that came in a plastic bag rather than authentic PANDORA-branded packaging.







52.     Another product listing used by Defendants is the PANDORA Signature Heart Birthstone Charm pictured below.



53.     One consumer of this product complained of receiving a product that was tarnished and dirty, as if it had been used.

 **Came Tarnished and Dirty as if it was used.**

September 24, 2019

Style: October | Verified Purchase

Please inspect prior to giving as gifts.
The packaging looked good (minus the bag all folded up) but when I took the charm out to see it, it was tarnished and dirty as if it was used. This is a gift, I can't give it like this so I'm returning it.



54.     Other customers on that listing complained of receiving the wrong products, preventing them from being used as gifts as the customers intended:





56.    Three out of the four reviews on this product complain that it is fake.



Carlos Manuel Canela Núñez

★☆☆☆☆  **Not original.**

November 21, 2019

**Verified Purchase**

Not original, lost color after 3 days

| Helpful | ∨ Comment | Report abuse |

Translated from Spanish by Amazon

See original · Report translation

Jessica

★☆☆☆☆  **Not original**

November 13, 2019

**Verified Purchase**

Not original. Dont buy

| Helpful | ∨ Comment | Report abuse |

Zuleidy

★☆☆☆☆  **Not original.**

September 25, 2019

**Verified Purchase**

After two days he lost the gold, it's not original.

One person found this helpful

| Helpful | ∨ Comment | Report abuse |

57.     Purchasers of other products bearing the PANDORA Registered Trademarks sold by Defendants on Amazon have also left negative reviews of the products.

58.     On December 6, 2019, on the PANDORA Moments Smooth Silver Padlock Bracelet product listing used by Defendant and one other unauthorized seller, a customer left a review showing that she received a product that was broken upon arrival and apparently outside authentic PANDORA packaging.

★☆☆☆☆  **This was to much money for this to be broken on Arrival**
December 6, 2019
Length: 7.10   |   **Verified Purchase**

How I Received this bracelet. Was so upset and now I have to send it back and wait for my money to come back so I can go buy one from Pandora store. 😔😔



59.     And on the PANDORA Flower Crown 925 Sterling Silver Ring product listing, currently sold by Defendants and one other unauthorized seller, a customer complained of receiving a product that was "discolored" and "definitely not" the same product available in the PANDORA store.

★☆☆☆☆  **Not authentic**
August 16, 2019
Ring Size: 2.5   |   **Verified Purchase**

I've seen this ring in the Pandora store and this is definitely not it! It's literally gray and discolored and not even shiney! Soooo bad I'll be returning

60.     Upon information and belief, the foregoing complaints were made by consumers who purchased products from Defendants or similar unauthorized sellers.

**PANDORA Has Implemented Strict Quality Controls to Ensure Product Quality,
Particularly on Online Marketplaces**

61.     PANDORA's distribution controls are a quality control measure intended to minimize
the risk and reputational damage caused by the illegal sale of poor-quality products bearing the
PANDORA Registered Trademarks by unauthorized sellers like Defendants who do not abide by
PANDORA's quality controls.  The goal of PANDORA's quality control program is to ensure that
consumers who buy PANDORA products, including ones buying online, receive the high-quality
products and services that they expect with the PANDORA name.  By preventing consumers from
receiving poor-quality products, the program both protects consumers from confusion and also
protects the value and goodwill associated with the PANDORA brand.

62.     PANDORA abides by its quality control requirements and requires its Authorized
Dealers to abide by them as well.

63.     PANDORA's ability to exercise its quality controls is essential to the integrity and
quality of PANDORA products, as well as the value of the PANDORA Registered Trademarks and
other intellectual property.

64.     PANDORA's quality controls begin with requiring that all outside sales of its
products take place through PANDORA's own website and stores, or through Authorized Dealers.
This basic step ensures that everyone who is selling PANDORA products is ultimately subject to
PANDORA's quality control requirements.

65.     PANDORA carefully vets prospective Authorized Dealers to ensure that only those
applicants with a reputation for and a commitment to quality are permitted to become Authorized
Dealers of PANDORA products.

66.     Authorized Dealers are required by contract to sell products only in certain channels and to abide by PANDORA's Franchise Agreement or Authorized Retailer Terms and Conditions (collectively, the "PANDORA Terms").

67.     Among other conditions, the PANDORA Terms require Authorized Dealers to purchase PANDORA products and services only from PANDORA directly or authorized suppliers approved by PANDORA.  This restriction ensures that the chain of custody can be established for all PANDORA products sold to consumers by Authorized Dealers, and thus prevents counterfeits, secondhand goods, or other low-quality products from entering into the distribution chain.  On the flip side, the PANDORA Terms also require Authorized Dealers to sell only to end users (and not resellers), thus preventing leaks in the chain of distribution.

68.     The PANDORA Terms also require Authorized Dealers to inspect all shipments of PANDORA products and report any problems to PANDORA promptly.  Authorized Dealers must further inspect the products prior to sale.  These inspections minimize the risk that consumers receive damage products, or products that are different from what they ordered.

69.     The PANDORA Terms prohibit Authorized Dealers from altering any PANDORA products or packaging without PANDORA's consent, or selling PANDORA products outside of approved PANDORA-branded packaging.  As discussed above (*supra* ¶¶ 16, 49), the packaging is an integral part of luxury jewelry like PANDORA's, particularly when given as gifts, and consumers leave complaints that hurt PANDORA's brand when they receive products in non-PANDORA packaging.

70.     Authorized Dealers are provided specific instructions on how Internet purchases are to be packaged.  Specifically, items are to be placed in a PANDORA-branded white clamshell box with a silica gel packet to absorb any moisture and protect item from tarnishing.  The clamshell

box is then encased in a cardboard slipcover, to avoid damage to the box during shipping.  That is then placed in a plastic poly-bag that is sealed shut and (for items sold on Amazon.com) stickered with the label bearing the Fulfillment Network Stock Keeping Unit ("FNSKU") item identifier.

71.     The PANDORA Terms also require Authorized Dealers to provide an appropriate retail environment consistent with PANDORA's branding, and to give consumers instructions about PANDORA's products and the warranty and services that come with them.  Authorized Dealers are also required to participate in training that gives them, among other things, knowledge that allows them to provide insight to customers about the full line of PANDORA products.  Authorized Dealers are also trained to provide assistance to PANDORA's United States customers with respect to PANDORA's Limited Warranty.  These requirements ensure that consumers get all the information they need and service they expect related to PANDORA products.

72.     Authorized Dealers are subject to auditing and review upon request by PANDORA to ensure that the PANDORA Terms are being followed.

73.     It is only by limiting authorized sales to Authorized Dealers who have access to, and are contractually bound to follow, the PANDORA Terms that PANDORA is able to ensure the satisfaction of consumers and to maintain the integrity and reputation of the PANDORA brand.

**PANDORA Follows Additional Quality Controls for Products Sold Online**

74.     As shown in consumer reviews cited above (¶¶ 47-59), PANDORA products sold online are more susceptible to quality and authenticity problems as consumers cannot see the product before they buy it.  These problems are especially severe on online marketplaces such as Amazon, where the identity of the actual seller may be anonymous and many sellers may share a single product listing page.

75.     Accordingly, PANDORA has placed additional quality control requirements on sellers wishing to sell online, which are in addition to those that apply to all Authorized Dealers.

76.     Initially, all of PANDORA's Authorized Dealers are required to obtain PANDORA's approval to sell online.  PANDORA will only approve a website where it is clear that the website is operated by the Authorized Dealer in its own name, thus preventing sales by anonymous online sellers who are not accountable to consumers or PANDORA and making sure that consumers always know who they are buying from, the way they would know what store they are buying from when shopping brick-and-mortar.  Prior to approving a website, PANDORA will also check to ensure that all descriptions of PANDORA products and services on the website are accurate so that consumers know exactly what they are buying.

77.     Because of the unique nature of the Amazon marketplace, PANDORA has only named one authorized seller on Amazon, and that authorized seller is subject to even more heightened quality controls in addition to the quality controls that apply to all other Authorized Dealers.

78.     Among these quality controls, PANDORA's authorized Amazon seller is prohibited from selling anonymously and required to use reasonable efforts to respond to all consumer feedback and provide copies of the consumer feedback and related material to PANDORA upon request.  These requirements allow the consumer to identify the seller and know who to contact to address issues, as well as allowing PANDORA to quickly identify and address any quality issues that consumers encounter.

79.     PANDORA's authorized Amazon seller is also required to provide monthly reports of performance data collected by Amazon such as order defect rates and customer dissatisfaction rates.  This data is a quantitative measure of a seller's quality and is collected by Amazon for all sellers but not made publicly available.  By requiring its authorized seller to provide this data, PANDORA is able to ensure that the seller remains high-quality.

21

80.     PANDORA's authorized Amazon seller must not allow Amazon to commingle its inventory with other sellers.  Amazon sellers may use Amazon to fulfill orders for their products. If they do so, by default, Amazon will commingle their products with those of other sellers on the same product listing (this commingling makes it easier for Amazon to manage its logistics).  As the United States Senate Finance Committee recently recognized (*see supra* ¶ 32), the practice of commingling increases the risk that consumers will receive counterfeits because counterfeit inventory can be commingled with other inventory.  Amazon sellers must affirmatively opt-out of commingling and take the extra step of applying special stickers to prevent commingling. PANDORA's authorized Amazon seller is required to take this step, but PANDORA has no way of knowing if unauthorized Amazon sellers are taking this step.

81.     PANDORA also operates an Online Quality Control Auditing Program, under which it periodically examines and conducts test purchases from all authorized websites to ensure that PANDORA's quality control requirements are being followed.

82.     These quality controls are essential to the reputation of the PANDORA Registered Trademarks because they minimize the risk that consumers purchasing PANDORA products on Amazon will receive poor-quality or counterfeit products, and allow PANDORA to quickly address any quality issues that do arise.

**Genuine PANDORA Products Come with PANDORA's Limited Warranty**

83.     PANDORA also provides customers who purchase genuine PANDORA products from http://estore-us.pandora.net, a PANDORA owned and operated store, or an Authorized Dealer, with the PANDORA Limited Warranty ("PANDORA Warranty").  The PANDORA Warranty covers the cost of repair, replacement, or refund of the purchase price for PANDORA products suffering from defects in materials or workmanship brought on by ordinary consumer use for a period of one year from the date of original retail purchase from an Authorized Dealer.  *See Official PANDORA Limited*

22

*Warranty Policy, available at* https://us.pandora.net/en/warranty/warranty-repairs.html?position=bottom&src=categorySearch&srcName=Warranty. Such statements are incorporated herein.

84.     The PANDORA Warranty is available only for products purchased from http://estore-us.pandora.net, a PANDORA owned and operated store, or an Authorized Dealer.

85.     PANDORA offers a PANDORA Warranty only for products purchased through authorized channels because PANDORA cannot ensure the quality of products sold by unauthorized sellers.  As shown by the consumer complaints cited in ¶¶ 47-59, unauthorized sellers frequently sell products that are counterfeit, outside of original packaging, used, or tarnished.

86.     All individuals and entities—including Authorized Dealers—are prohibited from selling PANDORA products on www.amazon.com ("Amazon") and other third-party marketplaces without PANDORA's prior written consent.  Accordingly, any PANDORA product sold on a third-party marketplace such as Amazon without the prior written consent of PANDORA does not come with the PANDORA Warranty.

87.     The PANDORA Warranty is a material part of what consumers expect when they purchase authentic PANDORA products.  As shown in the following screenshots, consumers have left negative reviews on Amazon product pages where the Defendants sold non-genuine products bearing the PANDORA Registered Trademarks citing the lack of coverage under the PANDORA Warranty for those non-genuine products:

⭐☆☆☆☆ **Only 1 month. Broke!**

December 20, 2019

Color: Yellow | **Verified Purchase**

1 Month and it is broke. Gorgeous but no worth for the money. Don't waste your money on it. Pandora denied the waranty. So sad!



⭐☆☆☆☆ **DONT DO IT!!!! PLEASE READ BEFORE PURCHASE!!!!**

September 21, 2019

Length: 19 | **Verified Purchase**

No stars whatsoever. To be honest, the clasp is horrible and is so difficult to open. The bracelet is already disfigured. The clasp holders are already falling apart and I've only had this bracelet for a month. When I went to pandora the store to see if they could fix it, they wouldn't even touch it unless it was from pandora themselves. If this is supposed to be 100% authentic pandora bracelet why wouldn't they accept it with my receipt and original order as a "pandora" equal? This bracelet will brack and fade on you quickly and if you even try to get it fixed at a pandora store they will NOT ACCEPT IT! Understand that just because it says pandora doesn't mean it's REALLY pandora. Honestly save your money and purchase it at an real pandora store, you'll be happy you did.

### Defendants' Unauthorized Sales of Non-Genuine Products Bearing the PANDORA Registered Trademarks

88.     PANDORA polices the sale of its products online.  In the course of monitoring online listings of PANDORA products, PANDORA discovered products bearing the PANDORA Registered Trademarks being illegally sold by Defendants on Amazon under the storefront name "StellarSales123" on or about July 22, 2019.

89.     Particularly troubling is the sheer volume of PANDORA being sold under the StellarSales123 storefront.   Since the storefront was first identified in July 2019, PANDORA estimates that the storefront sold ***over 15,000 units*** of PANDORA products with a total revenue over $650,000.

90.     After PANDORA discovered products bearing the PANDORA Registered Trademarks being illegally sold on the Amazon storefront, PANDORA investigated the storefront to determine who was operating the storefront.

91.     Because Defendants do not disclose their business or contact information on their storefront and sell products through the storefront anonymously, PANDORA had to spend significant time and money investigating the storefront to attempt to identify the real identity of the business and people operating it.

92.     After conducting an investigation, PANDORA identified Defendants as the owners and operators of the "StellarSales123" storefront.

93.     On or about August 15, 2019, counsel for PANDORA sent Defendants a cease-and-desist letter, demanding that they immediately cease selling products bearing the PANDORA Registered Trademarks.

94.     This letter further notified Defendants that they were injuring PANDORA in Maryland through their illegal actions and that they would be subject to personal jurisdiction in Maryland if they continued to engage in their conduct.

95.     This letter also notified Defendants that PANDORA had contracts with its Authorized Dealers that prohibited sale to resellers and that Defendants would be tortiously interfering with those contracts if they continued to purchase products bearing PANDORA's Registered Trademarks from Authorized Dealers for resale.

96.     Defendants did not respond to this letter and continued to sell products bearing the PANDORA Registered Trademarks on the StellarSales123 storefront.

97.     Counsel for PANDORA sent Defendants a second cease-and-desist letter on or about August 26, 2019.

25

98.     Defendants did not respond to this second cease-and-desist letter.

99.     Counsel for PANDORA sent Defendants a third cease-and-desist letter on September 6, 2019.

100.    Defendants again did not respond to this third cease-and-desist letter.

**Defendants' Sales Do Not Follow and Interfere with PANDORA's Quality Controls**

101.    Defendants are not Authorized Dealers of PANDORA products and are not subject to, and do not comply with, the PANDORA Terms.

102.    Because Defendants are not Authorized Dealers of PANDORA products, PANDORA is unable to exercise control over the quality of products Defendants sell bearing the PANDORA Registered Trademarks.

103.    Defendants directly violate PANDORA's quality controls by selling products anonymously. Defendants do not publicly display their real business name, any email or physical address, or even any telephone number on their Amazon storefront.

104.    Defendants also interfere with PANDORA's quality controls because PANDORA is unable to audit Defendants' practices. Therefore, among other things, PANDORA cannot know if Defendants are sourcing products from reliable sources, inspecting products upon receipt, avoiding risky fulfillment practices such as commingling, ensuring that products are sold only in official and unaltered PANDORA packaging, or providing good customer service. Defendants' practices thus risk introducing counterfeit and other non-genuine products bearing the PANDORA Registered Trademarks into the stream of commerce.

105.    The products Defendants sell are not genuine PANDORA products because the products are not subject to, do not abide by, and interfere with PANDORA's quality controls.

**Defendants' Amazon Storefront's Conduct Has Resulted in Consumer Complaints**

106.     Consumers on Amazon can leave reviews of sellers as well as products.  Although most consumers on Amazon do not research the seller when buying a product but simply buy from whichever seller Amazon places in the "Buy Box," some consumers are aware of different sellers and leave reviews on the seller's storefront page.

107.     Several consumers have complained about receiving inauthentic or otherwise poor-quality products bearing the PANDORA Registered Trademarks when purchasing from Defendants' StellarSales123 storefront.   The following screenshots show that, since November 2019 alone, *seven* of Defendants' customers have complained of receiving fake products bearing the PANDORA Registered Trademarks:

★★★☆☆ "It was disappointing Not a colorful rainbow like the picture. I'm wondering if it's a real Pandora. "
By Pamela Burke on February 27, 2020.

★☆☆☆☆ "This is NOT authentic pandora like advertised. This is FAKE!! "
By Kaitie Jackson on February 4, 2020.

★★★★☆ "Item is as described. Looks authentic but may not be. The earrings came pushed into a non pandora cushion board. "
By Savvyshopper on January 21, 2020.

★☆☆☆☆ "NOT AUTHENTIC. Box came with "instructions" terrible printing quality. Not REAL pandora. If you look closely enough at the images I uploaded you can see the terrible quality compared to legitimate pandora. Returned immediately. "
Read less

By nathan rush on January 17, 2020.

★☆☆☆☆ "Its a fake !! DoIr does not have the "Ale " inscription that Every Pandora jewelry have. It is a very good copy ! "
By Maria San Silvestre on January 8, 2020.

⭐☆☆☆☆ "This item was NOT a Pandora charm. It was a cheap copy. Poor Quality!"

By Amazon Customer on December 30, 2019.

⭐☆☆☆☆ "Item is a fake. Purchased the same one from company's website, and there are noticeable differences. Seller doesn't respond to any messages"

By derek wilson on November 7, 2019.

⭐☆☆☆☆ "I wanted what was pictured and was sent something else also wanted a PANDORA clip there was no proff this was a pandora chstm and its a bead not a clip its to much a hassel to return i would not buy from this seller agsin"
Read less

By Jill McKibbin on November 7, 2019.

108.    Other customers have complained of receiving incorrect products bearing the PANDORA Trademarks, or products in incorrect packaging.  As seen in the reviews, incorrect packaging is likely to make customers think that the products are not genuine.  Further, purchasers expect to receive the full PANDORA luxury experience of unboxing their product, of which the appropriate PANDORA packaging is an essential element.  This is of particular concern to a large portion of the PANDORA customers who purchase PANDORA jewelry as gifts and expect to present the item in authentic PANDORA packaging:

 "This item was the correct item but was in the wrong package. I am concerned that it was pulled out of the original package and used before being placed in another package. Why would it otherwise be in the wrong package?"
Read less

By Kevin Jackson on December 27, 2019.

⭐☆☆☆☆ "I ordered the pink version of the ring and checked many times prior to placing the order and after I ordered it was shown as the pink ring then when it arrived it was the gold version. Now it is Christmas eve and the only thing my wife wanted for Christmas was the pink ring and I do not have it. It has nothing to due with price it is the product was not was advertised. never use this seller."
Read less

By Bill Stoiber on December 24, 2019.

★☆☆☆☆    *"I ordered an 8.1 inch but I received a 7.5 inch instead and it was too small for my wife's wrist."*

By Clyde Davis on December 16, 2019.

★☆☆☆☆    *"I ordered a Pandora Charm and this seller sent the completely wrong charm. They said they would send a replacement immediately but the replacement didn't ship out for four days causing me not to have a gift for my friends birthday."*
Read less

By CampFJ on December 16, 2019.

109.    Finally, some customers have complained of receiving damaged products and packaging:

★★★★☆    *"Product purchased as a gift. The products outer packaging is damaged but the product itself appears fine. would give 5 stars if packaging was presentable."*

By scott on December 1, 2019.

★★☆☆☆    *"Item was delivered but with defects. The bracelet is no longer closing"*

By Mark M. on November 15, 2019.

110.    These seller reviews are evidence that Defendants ship products bearing the PANDORA Registered Trademarks that are poor-quality or even outright counterfeit.   Many consumers who receive such products from Defendants may leave poor reviews of PANDORA products rather than Defendants' seller performance (*see supra* ¶¶ 47-59), or become less likely to buy and recommend PANDORA products in the future because they have attributed these quality problems to PANDORA.

### Defendants' Products Do Not Come With the PANDORA Warranty

111.    As set forth above, genuine PANDORA products purchased from http://estore-us.pandora.net, a PANDORA owned and operated store, or an Authorized Dealer come with the

PANDORA Warranty because they comply with PANDORA's quality controls, and this PANDORA Warranty is a material part of what consumers expect when they purchase PANDORA products.

112.    Because Defendants are not Authorized Dealers of PANDORA products and do not comply with PANDORA's quality controls, the products they sell bearing the PANDORA Registered Trademarks do not come with the PANDORA Warranty.

113.    Because the products Defendants sell do not come with the PANDORA Warranty, they are materially different from genuine PANDORA products.

114.    Defendants' unauthorized sale of non-genuine products bearing the PANDORA Registered Trademarks but without the PANDORA Warranty is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine PANDORA Products that come with the PANDORA Warranty when, in fact, they are not.

**PANDORA Has Suffered Substantial Harm as a Result of Defendants' Conduct**

115.    As set forth above, the unauthorized sale of products bearing the PANDORA Registered Trademarks through unauthorized sellers such as Defendants has caused significant harm to the PANDORA brand.

116.    When a consumer receives a non-genuine, damaged, or poor-quality product from an unauthorized seller, such as Defendants, the consumer associates that negative experience with PANDORA.  As such, Defendants' ongoing sale of non-genuine products bearing the PANDORA Registered Trademarks harms the PANDORA brand.

117.    PANDORA has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

118.    PANDORA has suffered, and will continue to suffer, irreparable harm as a result of

Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill,

business and customer relationships, intellectual property rights, and brand integrity.

119.    PANDORA is entitled to injunctive relief because, unless enjoined by this Court,

Defendants will continue to unlawfully sell non-genuine products bearing the PANDORA Registered

Trademarks, causing continued irreparable harm to PANDORA's reputation, goodwill,

relationships, intellectual property, and brand integrity.

120.    Furthermore, Defendants' conduct was and is knowing, reckless, intentional,

willful, malicious, wanton, and contrary to law.

121.    Defendants' disregard of communications from PANDORA and continuation of

selling of non-genuine products despite being informed of their unlawful conduct demonstrates

that they are acting intentionally, willfully, and maliciously.

122.    Defendants' willful violations of the PANDORA Registered Trademarks and

continued pattern of misconduct demonstrate intent to harm PANDORA.

**The Individual Defendants Are Liable**

123.    PANDORA asserts claims against individual Defendants Boruch B. Duchman and

Yonit J. Duchman (collectively, the "Duchmans") in both their individual capacities as well as

their capacities as corporate officers of the corporate Defendant Unique Sales Corp.

124.    Upon information and belief, the Duchmans direct, control, ratify, participate in, or

are the moving force behind the sales of infringing products bearing the PANDORA trademarks

through the StellarSales123 storefront.  Accordingly, the Duchmans are personally liable for

infringing PANDORA's trademarks independently of Unique Sales Corp.

125.    In addition, upon information and belief, the corporate Defendant Unique Sales

Corp. follows so few corporate formalities and is so dominated by the Duchmans that it is merely

an alter ego of the Duchmans.  Unique Sales Corp.'s status as an alter ego is supported, in part, by the fact that Unique Sales Corp.'s address is the same as the Duchmans' residential home address and Unique Sales Corp. appears to have no officers other than the Duchmans.  Accordingly, PANDORA is entitled to pierce the corporate veil and hold the Duchmans personally liable for the infringing activities of Unique Sales Corp.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114 and 1125(a)(1)(A)

126.    PANDORA hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

127.    PANDORA is the owner of the PANDORA Registered Trademarks.

128.    PANDORA has registered the PANDORA Registered Trademarks with the United States Patent and Trademark Office.

129.    The PANDORA Registered Trademarks are valid and subsisting trademarks in full force and effect.

130.    Defendants willfully and knowingly used, and continue to use, the PANDORA Registered Trademarks in commerce for purposes of selling non-genuine products bearing the PANDORA Registered Trademarks on the Internet without PANDORA's consent.

131.    The products Defendants sell bearing the PANDORA Registered Trademarks are not authorized for sale by PANDORA.

132.    The products Defendants sell bearing the PANDORA Registered Trademarks are materially different from genuine PANDORA products because they are not subject to, do not abide by, and interfere with the legitimate and substantial quality controls that PANDORA has established.

133.   The products Defendants sell bearing the PANDORA Registered Trademarks are materially different from genuine PANDORA products because they do not come with the PANDORA Warranty, which accompanies genuine PANDORA products.

134.   Defendants' unauthorized sale of materially different products bearing the PANDORA Registered Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine PANDORA products when they are not.

135.   Defendants' unauthorized sale of materially different products bearing the PANDORA Registered Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with PANDORA when, in fact, they are not.

136.   Defendants' unauthorized use of the PANDORA Registered Trademarks has infringed upon and materially damaged the value of the PANDORA Registered Trademarks, and caused significant damage to PANDORA's business relationships.

137.   As a proximate result of Defendants' actions, PANDORA has suffered, and will continue to suffer immediate and irreparable harm.  PANDORA has also suffered, and continues to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

138.   PANDORA is entitled to recover its damages caused by Defendants' infringement of the PANDORA Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

139.   PANDORA is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, PANDORA will suffer irreparable harm.

140.   PANDORA is entitled to enhanced damages including but not limited to any profits Defendants received from their unauthorized use of the PANDORA Registered Trademarks and sale of products bearing the PANDORA Registered Trademarks and attorneys' fees and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the PANDORA Registered Trademarks.

## SECOND CAUSE OF ACTION
### Unfair Competition
### 15 U.S.C. § 1125(a)

141.   PANDORA hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

142.   As set forth above, Defendants are selling non-genuine products bearing the PANDORA Registered Trademarks that are materially different from genuine PANDORA products.

143.   Defendants' sale of non-genuine products bearing the PANDORA Registered Trademarks is likely to cause consumer confusion and lead consumers to believe that those products are affiliated with, connected with, associated with, sponsored by, or approved by PANDORA when they are not.

144.   Defendants' conduct constitutes unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

145.   PANDORA is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, PANDORA will suffer irreparable harm.

146.   PANDORA is entitled to enhanced damages including but not limited to any profits Defendants received from their unauthorized use of the PANDORA Registered Trademarks and sale of products bearing the PANDORA Registered Trademarks and attorneys' fees and attorneys'

fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the PANDORA Registered Trademarks.

### THIRD CAUSE OF ACTION
**Trademark Infringement**
**Md. Code Ann., Bus. Reg. 1-414**

147.     PANDORA hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

148.     The PANDORA Registered Trademarks are distinctive and widely recognized by the consuming public.  PANDORA's products are sold and purchased through its website, retail stores, and its network of Authorized Dealers throughout the United States, including Maryland.

149.     Defendants willfully and knowingly used, and continue to use, the PANDORA Registered Trademarks in commerce for purposes of selling non-genuine products bearing the PANDORA Registered Trademarks in Maryland without PANDORA's consent.

150.     Defendants' unauthorized sale of products bearing the PANDORA Registered Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine PANDORA products when they are not.

151.     Defendants' unauthorized sale of products bearing the PANDORA Registered Trademarks is likely to cause confusion, cause mistake, or deceive consumers as to the origin of the goods or services because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with PANDORA when they are not.

152.     PANDORA is entitled to injunctive relief under Md. Code Ann., Bus. Reg. 1-414(d) because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, PANDORA will suffer irreparable harm.

153.     PANDORA is entitled to enhanced damages, including but not limited to any profits Defendants received from their unauthorized use of the PANDORA Registered Trademarks and

sale of products bearing the PANDORA Registered Trademarks and attorneys' fees under Md. Code Ann., Bus. Reg. 1-414(b)(2) because Defendants intended to confuse or deceive consumers with its infringement of the PANDORA Registered Trademarks.

## FOURTH CAUSE OF ACTION
### Common Law Unfair Competition

154.   PANDORA hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

155.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the PANDORA Registered Trademarks interferes with PANDORA's quality controls and its ability to exercise quality control over products bearing the PANDORA Registered Trademarks.

156.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the PANDORA Registered Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the PANDORA Registered Trademarks suggests that the products Defendants offer for sale are subject to, and abide by, PANDORA's quality controls when, in fact, they are not.

157.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the PANDORA Registered Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the PANDORA Registered Trademarks suggests that the products Defendants offer for sale are genuine PANDORA products when, in fact, they are not.

158.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the PANDORA Registered Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the PANDORA Registered Trademarks suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with PANDORA when, in fact, they are not.

159.    Defendants' unlawful actions constitute active misrepresentation as to the source of the products they sell.  These false representations tend to confuse customers and induce them to believe that Defendants' products are genuine PANDORA products when, in fact, they are not.

160.    Defendants' unauthorized sale of products bearing the PANDORA Registered Trademarks and unauthorized use of the PANDORA Registered Trademarks in advertising infringes the PANDORA Registered Trademarks and constitutes unfair competition at common law.

161.    Defendants' unauthorized use of the PANDORA Registered Trademarks has materially damaged the value of the PANDORA Registered Trademarks, caused significant damage to PANDORA's business relations, and infringed the PANDORA Registered Trademarks.

162.    As a result, PANDORA has suffered, and continues to suffer, immediate and irreparable harm.  PANDORA has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

163.    PANDORA is also entitled to punitive damages because Defendants acted with actual malice accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

## FIFTH CAUSE OF ACTION
### Tortious Interference with Contractual Relations

164.    PANDORA hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

165.    PANDORA has contracts and business relationships with its Authorized Dealers, who sell PANDORA products.  These contracts prohibit PANDORA's Authorized Dealers from selling to unauthorized resellers such as Defendants for purposes of resale.

166.    Defendants are not Authorized Dealers of PANDORA products.

167.    Defendants have sold—and continue to sell—a high volume of products bearing the PANDORA Registered Trademarks through their Amazon storefront.

168.    PANDORA has not itself sold any PANDORA products to Defendants.

169.    Based on these facts, it is plausible and a reasonable inference that Defendants acquired the products they are reselling from one or more of PANDORA's Authorized Dealers.

170.    Defendants knew since (at the latest) receiving PANDORA's August 15, 2019 cease-and-desist letter that PANDORA had agreements with these Authorized Dealers that prohibited unauthorized online sales and sales to resellers, and that Defendants would tortiously interfering with those agreements if they continued to acquire products from Authorized Dealers for resale.

171.    Defendants, without legal right, privilege, or justification, intentionally interfered with the contracts and business relationships between PANDORA and its Authorized Dealers by purchasing products from Authorized Dealers for the purpose of reselling products on the Internet in violation of the Authorized Dealers' contracts with PANDORA.

172.    Upon information and belief, Defendants interfered with PANDORA's contracts with its Authorized Dealers through wrongful means, namely concealing and failing to disclose their intention to resell the products even after being informed that this intention would mean that Authorized Dealers would be breaching their agreements with PANDORA by selling to Defendants.

173.    Because Defendants have refused to disclose how they have obtained the products bearing the PANDORA Trademarks they have resold, PANDORA must take discovery in this action to learn the specific identities of the Authorized Dealers that sold products to Defendants. Defendants, however, know the sources of the PANDORA products they have obtained and the basis for PANDORA's claim of tortious interference. PANDORA's agreements with its Authorized Dealers

are a specific class of contract that Defendants caused Authorized Dealers to breach when they purchased products from Authorized Dealers for resale.

174.     Defendants' actions have caused injury to PANDORA for which PANDORA is entitled to compensatory damages in an amount to be proven at trial.

175.     The injury to PANDORA is immediate and irreparable, as PANDORA's reputation and relationships have been damaged among both its consumers and Authorized Dealers.

176.     PANDORA is also entitled to punitive damages because Defendants acted with actual malice and accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

## PRAYER FOR RELIEF

WHEREFORE, PANDORA prays for relief and judgment as follows:

A.     Judgment in favor of PANDORA and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, liquidated damages, restitution, including disgorgement of profits, and pre-judgment and post-judgment interest, as permitted by law;

B.     Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)     Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the PANDORA Registered Trademarks;

ii)     Prohibiting the Enjoined Parties from using any of the PANDORA Registered Trademarks in any manner, including advertising on the Internet;

iii)  Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all products bearing any of the PANDORA Registered Trademarks;

iv)  Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the PANDORA Registered Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)  Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of PANDORA's products, or any of the PANDORA Registered Trademarks;

vi)  Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the PANDORA Registered Trademarks which associate PANDORA's products or the PANDORA Registered Trademarks with the Enjoined Parties or the Enjoined Parties' websites; and

vii)  Requiring the Enjoined Parties to take all action to remove the PANDORA Registered Trademarks from the Internet, including from the website www.amazon.com.

C.      An award of attorneys' fees, costs, and expenses.

D.      Such other and further relief as the Court deems just, equitable and proper.

Date: March 5, 2020                          **NELSON MULLINS RILEY & SCARBOROUGH, LLP**

                                    /s/
                                    Michael E. Blumenfeld (Fed Bar No. 25062)
                                    NELSON MULLINS RILEY & SCARBOROUGH, LLP
                                    100 S. Charles Street | Suite 1600
                                    Baltimore, Maryland 21201
                                    (443) 392-9412 (Telephone)
                                    (443) 392-9499 (Facsimile)
                                    Email: michael.blumenfeld@nelsonmullins.com


                                    William D. Kloss Jr.* (Ohio Bar 0040854)
                                    Martha Brewer Motley* (Ohio Bar 0083788)
                                    (*pro hac vice* applications forthcoming)
                                    Vorys, Sater, Seymour and Pease LLP
                                    52 E. Gay Street
                                    P.O. Box 1008
                                    Columbus, OH 43216-1008
                                    Phone: (614) 464-6400
                                    Fax: (614) 719-6350
                                    Email: wdklossjr@vorys.com
                                    Email: mbmotley@vorys.com

                                    *Attorneys for Plaintiff PANDORA Jewelry, LLC*
                                    *\*denotes national counsel who will seek pro hac vice*
                                    *admission*

41

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PANDORA demands a trial by jury on all issues so triable.

Date: March 5, 2020                     **NELSON  MULLINS  RILEY  & SCARBOROUGH, LLP**

/s/
Michael E. Blumenfeld (Fed Bar No. 25062)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
100 S. Charles Street | Suite 1600
Baltimore, Maryland 21201
(443) 392-9412 (Telephone)
(443) 392-9499 (Facsimile)
Email: michael.blumenfeld@nelsonmullins.com


William D. Kloss Jr.* (Ohio Bar 0040854)
Martha Brewer Motley* (Ohio Bar 0083788)
(*pro hac vice* applications forthcoming)
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
Phone: (614) 464-6400
Fax: (614) 719-6350
Email: wdklossjr@vorys.com
Email: mbmotley@vorys.com

*Attorneys for Plaintiff PANDORA Jewelry, LLC
*denotes national counsel who will seek pro hac vice admission*